No. 24-2547

---

## UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

---

UNION PACIFIC RAILROAD COMPANY,
*Plaintiff-Appellant*,
v.
U.S. RAILROAD RETIREMENT BOARD,
*Defendant-Appellee*,

---

On Appeal from the U.S. District Court for the District of
Nebraska (Omaha), No. 8:24-cv-00051,
The Honorable Brian C. Buescher, U.S. District Judge

---

### REPLY BRIEF OF APPELLANT
### UNION PACIFIC RAILROAD COMPANY

---

Scott Parrish Moore
Spencer Murphy
BAIRD HOLM LLP
1500 Farnam Street,
Suite 1500
Omaha, NE 68102
Phone: (402) 344-0500
spmoore@bairdholm.com
smurphy@bairdholm.com

Daniel W. Wolff
CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2595
Phone: (202) 624-2500
dwolff@crowell.com

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Appellant Union Pacific Railroad Co. states that it is a wholly owned subsidiary of Union Pacific Corporation, a publicly traded company. No publicly held corporation is known to own 10% or more of the stock of Union Pacific Corporation.

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT............................................i

INTRODUCTION ..................................................................1

ARGUMENT ........................................................................3

I.    The Board fails to explain why UP's APA claim is not
      actionable under controlling precedent.........................5

      A.   The April 2023 Order was final agency action. ..................5

      B.   The Board ignores this controlling precedent......................8

      C.   *Thunder Basin* is inapposite, and does not
           support the Board's position in any event. .........................13

II.   The Board's new merger theory is forfeited, wrong, and
      above all else underscores why reversal is necessary. ...............22

III.  Mandamus is not the appropriate remedy.................................23

CONCLUSION .......................................................................25

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

Appellate Case: 24-2547    Page: 3    Date Filed: 12/23/2024 Entry ID: 5469131

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ali v. Frazier,*
575 F. Supp. 2d 1084 (D. Minn. 2008) ................................................. 24

*Arch Coal, Inc. v. Acosta,*
888 F.3d 493 (8th Cir. 2018) ........................................................ 15, 16

*Axon Enter., Inc. v. Fed. Trade Comm'n,*
598 U.S. 175 (2023) .................................................................... 13, 17

*Bennett v. Spear,*
520 U.S. 154 (1997) .......................................................... 2, 5, 8, 9, 10

*Borntrager v. Stevas,*
772 F.2d 419 (8th Cir. 1985) ........................................................ 11, 24

*California v. Texas,*
593 U.S. 659 (2021) ..................................................................... 22, 24

*Denberg v. U.S. Railroad Retirement Board,*
696 F.2d 1193 (7th Cir. 1983) ........................................................... 17

*Env't Def. Fund, Inc. v. Ruckelshaus,*
439 F.2d 584 (D.C. Cir. 1971) ............................................................. 5

*FTC v. Standard Oil Co. of California,*
449 U.S. 232 (1980) ...................................................................... 8, 9

*Great Plains Coop v. Commodity Futures Trading Comm'n,*
205 F.3d 353 (8th Cir. 2000) .............................................................. 14

*Hairston v. Railroad Retirement Board,*
2022 WL 18671129 (N.D. W. Va. Sept. 22, 2022) ............................... 17

iii

*Hawkes Co. v. U.S. Army Corps of Engineers*,
  782 F.3d 994 (8th Cir. 2015), *aff'd*, 578 U.S. 590 (2016)
  ...................................................................... 2, 5, 6, 8, 9, 10

*Linquist v. Bowen*,
  813 F.2d 884 (8th Cir. 1987).................................................... 10, 11

*Loper Bright Enters. v. Raimondo*,
  144 S. Ct. 2244 (2024) .................................... 10, 12, 20, 21

*Mace v. Skinner*,
  34 F.3d 854 (9th Cir. 1994)............................................ 10, 12

*National Mining Association v. Department of Labor*,
  292 F.3d 849 (D.C. Cir. 2002) ................................................ 16

*NetCoalition v. S.E.C.*,
  715 F.3d 342 (D.C. Cir. 2013) ............................................... 17

*Pattison Sand Co., LLC v. Federal Mine Safety and Health
  Review Commission*,
  688 F.3d 507 (8th Cir. 2012)......................................... 14, 15

*Rodriguez v. Penrod*,
  857 F.3d 902 (D.C. Cir. 2017) ............................................ 17

*Thunder Basin Coal Co. v. Martin*,
  969 F.2d 970 (9th Cir. 1992), *aff'd* 510 U.S. 200 (1994)
  .................................................... 2, 13, 14, 15, 18, 20, 21

*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994) ............................................... 12, 14, 17

*U.S. Army Corps of Engineers v. Hawkes Co.*,
  578 U.S. 590 (2016) ........................................................ 6

*United States v. Any and
  all Radio Station Transmission Equipment*, 207 F.3d 458
  (8th Cir. 2000) ................................................................... 12, 15

iv

**Statutes**

5 U.S.C. § 706(2) ............................................................................. 25

28 U.S.C. § 1331 ............................................................................ 10, 13

28 U.S.C. § 1361 ............................................................................ 11, 24

30 U.S.C. § 815 .................................................................................. 14

45 U.S.C. § 355(f) ............................................................................... 2

45 U.S.C. § 362(a) ............................................................................. 19

47 U.S.C. § 402 ................................................................................. 15

**Regulations**

20 C.F.R. §§ 258.5, 258.6(a) ............................................................... 7

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................... 3, 24

Fed. R. Civ. P. 12(b)(6) ................................................................... 3, 24

Appellate Case: 24-2547    Page: 6    Date Filed: 12/23/2024 Entry ID: 5469131

## INTRODUCTION

The District Court's decision to dismiss this Administrative Procedure Act (APA) case filed by Plaintiff/Appellant Union Pacific (UP) was wrongly decided. As explained in UP's opening brief, Order 2023-33 (the April 2023 Order) of Defendant/Appellee U.S. Railroad Retirement Board (Board) was final agency action, properly challenged in the District Court under the APA. That order marked the consummation of the Board's deliberation over a discrete issue—whether the Brotherhood of Maintenance of Way-Employes Division (BMWED) should participate as a "party" to the Board's coverage proceeding—and it decided rights and obligations and has legal consequences. Specifically, the Board's order gives the BMWED the right of access to UP's confidential information; it obligates UP to provide that information to the BMWED; and there is no practical way for UP to prevent the BMWED from using the knowledge it will gain from UP's disclosures of confidential information against UP in labor arbitration proceedings that will likely be decided long before any final coverage decision of the Board.

In response, the Board fails to respond meaningfully to UP's showing that it stated an APA claim under the governing case

authorities. In fact, the Board does not even acknowledge, let alone try to distinguish, the controlling APA precedents, including *Hawkes* and *Spear*. It instead puts most of its chips on *Thunder Basin*, but even there it never acknowledges the critical differences between UP's APA claim and the claims raised by the plaintiffs in *Thunder Basin* and its progeny.

But perhaps the surest signal that the District Court's decision dismissing UP's APA case was wrongly decided is the Board's own dramatic shift in the position it now advances. At the District Court, the Board "concede[d]" that the April 2023 Order was a "final order within the meaning of" the Railroad Unemployment Insurance Act's judicial review provision, 45 U.S.C. § 355(f), appealable directly to a court of appeals. The District Court agreed and dismissed UP's claim for that reason, stating that a court of appeals, not it, "now has jurisdiction." App. 128; R. Doc. 38 at 20. Yet, before this Court, the Board insists otherwise. It does not stick to its position below that its April 2023 Order was "final" or try to defend the District Court's conclusion that this Court (or any other available court of appeals) *now* has jurisdiction. To the contrary, it contends that the April 2023 Order is an interlocutory order of the Board, not appealable until the Board issues its ultimate coverage decision. The

Board's change of position effectively concedes that the District Court's decision was wrongly decided.

UP respectfully requests that this Court vacate the District Court's Order and remand the case for the District Court to consider the merits of UP's APA claim.

## ARGUMENT

In response to UP's opening brief, the Board raises a number of arguments, not a single one of which reflects the central premise of the argument it presented below in its Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, on which the District Court ruled. Below, it contended for purposes of its motion to dismiss that the April 2023 Order was "final" for purposes of judicial review under the Railroad Acts.[1] R. Doc. 31 at 6. And although, as noted in UP's opening brief, *see* Appellant's Op. Br. at 8-9, the Board changed its position in its reply brief in support of its motion to dismiss, presenting for the first time a Rule 12(b)(6) argument that the April 2023 Order was not final for purposes of APA review—a positional flip-flop that even the District Court referred

---

[1] For consistency, UP's references to "the Railroad Acts" should be interpreted to include both the Railroad Retirement Act and the Railroad Unemployment Insurance Act. *See* Appellant's Op. Br. at 2.

3

to as "an unexplained jettisoning of a position [the Board] took in its opening brief," App. 119; R. Doc. 38 at 11—the District Court did not pass on the Board's "change of position." App. 122; R. Doc. 38 at 14.

Before this Court, the Board doubles down on the position it failed to timely raise below, contending not only that the April 2023 Order is not final for APA purposes, but that it is not even final for Railroad Acts review purposes. The Board now argues that UP must wait for the Board to issue a final coverage decision, at which point any complaint UP wants to make about the April 2023 Order will merge into an appeal of the final coverage decision. As for the harm UP faces *now* as a result of the April 2023 Order, the Board says UP can petition for a writ of mandamus.

As explained below, none of these arguments were raised or preserved in the District Court. They are all, therefore, forfeited. But even if not forfeited, they fail on their merits.

Appellate Case: 24-2547     Page: 10     Date Filed: 12/23/2024 Entry ID: 5469131

## I. The Board fails to explain why UP's APA claim is not actionable under controlling precedent.

### A. The April 2023 Order was final agency action.

In *Bennett v. Spear*, 520 U.S. 154 (1997), the Supreme Court held that agency action is final when: (i) it marks the consummation of the agency's decision-making as to a particular issue; and (ii) it determines rights or obligations or results in legal consequences. *Id.* at 178. As this Court has held, the APA provides "wide[] availab[ility]" to challenge final agency decisions. *See Hawkes Co. v. U.S. Army Corps of Engineers*, 782 F.3d 994, 999 (8th Cir. 2015), *aff'd*, 578 U.S. 590 (2016). "The test of finality for purposes of review is not whether the order is the last administrative order contemplated by the statutory scheme, but rather whether it imposes an obligation or denies a right with consequences sufficient to warrant review." *Env't Def. Fund, Inc. v. Ruckelshaus*, 439 F.2d 584, 590 n.8 (D.C. Cir. 1971).

*Hawkes* is the perfect illustration of how the APA applies in situations like this one. In that case, this Court held that an agency decision preliminary to the final outcome of the agency review and permitting process was "final" for APA purposes because the decision, regarding "jurisdictional" waters of the United States under the Clean

5

Water Act, marked the conclusion of the agency's decision-making as to the jurisdictional waters question and had legal consequences for the regulated party. 782 F.3d at 999. *Hawkes* makes plain that the *interim* character of agency action is not dispositive of whether it is "final" for APA review purposes. *See id.* ("The possibility that the agency might informally reconsider its decision" is not dispositive of whether it is "final" under the APA). In fact, in affirming this Court's conclusion that the agency action was final, the Supreme Court noted that it is "a common characteristic of agency action" that the agency can change its mind, but that reality "does not make an otherwise definitive decision nonfinal." *U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 598 (2016). Provided the action is not "merely tentative" or "typically" the sort of action that would be revisited by the agency, it is final. *Id.* at 597-98.

Under this standard, the April 2023 Order was final within the meaning of the APA. Nobody disputes that, by the April 2023 Order, the Board concluded that the BMWED should be a party to its coverage proceedings. Furthermore, the months-long back and forth between UP and the Board Hearings Examiner as to the scope and contours of this order made clear the April 2023 Order was not merely tentative or likely

6

to be revisited. *See* Appellant's Op. Br. at 10-18 (describing history). And certainly nothing in the Board's response brief to this Court indicates the Board's order directing the BMWED to participate as a party will be reconsidered by the Board—to the contrary, the Board says UP can challenge the issue later, *after* the Board has concluded its coverage proceedings and issued a final decision on the merits of those proceedings. *See* Appellee's Br. at 29.

Nor can it seriously be disputed that rights and obligations were determined by, and legal consequences flow from, the April 2023 Order: per the Board's regulations, *see* 20 C.F.R. §§ 258.5, 258.6(a), the BMWED is, by virtue of that order, entitled to see all information in the administrative record, including UP's confidential business information, which includes, *inter alia*, information material to separate labor disputes between UP and the BMWED that are the subject of thousands of union grievances and arbitration proceedings. *See* Appellant's Op. Br. at 10-11 & n.4. That same action, in turn, imposes the legal obligation on UP to share its confidential information with the BMWED, with the obvious legal consequence of exposing its secrets to a party with which it has extant legal adversity on the same subject matter. Once the BMWED

7

is made aware of UP's confidential information, there is nothing that UP can do as a practical matter to prevent the BMWED from it using its newfound knowledge of that information against UP in its numerous labor arbitrations.

## B. The Board ignores this controlling precedent.

The Board looks past *Hawkes* and *Spear*. Indeed, it does not even mention those decisions. To the extent it addresses the issue of final agency action, the Board hangs its hat on *FTC v. Standard Oil Co. of California*, 449 U.S. 232 (1980), to explain why the April 2023 Order is not final. But *Standard Oil* is inapposite. That case dealt with "the issuance of a complaint by the [FTC] . . . averring that [the agency] had reason to believe that [Standard Oil] w[as] violating" the FTC Act. *Id.* at 233-34 (internal quotations omitted). That action was obviously the *beginning*, not the *end*, of agency action, and it also had no legal consequences for the plaintiff. The Supreme Court had no difficulty observing that the FTC complaint had a "lack of legal or practical effect upon" respondent, and that the FTC could "correct its own mistakes ...." *Id.* at 242.

8

Were UP complaining about the Board initiating the coverage proceeding in the first instance, the Board's invocation of *Standard Oil* might resonate. But, as noted already, UP's complaint is about a discrete, final action that the Board has no intention of revisiting. Moreover, the obvious legal consequences resulting from the April 2023 Order make all the difference. This is not a case where appellate review at some indefinite future date would provide meaningful relief: the disclosing of UP's confidential business information—to an entity to which UP is adverse in thousands of pending labor disputes, no less—is irreversible.

This is also why the Board's retort, *see* Appellee's Br. at 28-29, that UP's position has "few limits" and would open the door to "piecemeal review" misses the mark. The APA provides the limits: the agency action must be *final*, and for the reasons stated here and in UP's opening brief, the April 2023 Order was just that.

The Board contends that a holding in UP's favor would open the door to UP protesting in federal district court the "party" status of RailPros or its contract workers. *See* Appellee's Br. at 28. Here again, the Board disregards the "finality" analysis as explained in *Spear* and applied in *Hawkes* that serves a gatekeeping function. Of course, the

9

contours of who or what can be parties to Board proceedings present a question that is beyond the scope of this appeal—that goes to the heart of the underlying APA claim that the District Court declined to decide. Relevant to this appeal is that the Board itself is not the arbiter of those contours. *See Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2261 (2024). But to be sure, if the Board takes final action—meaning, per *Spear*, not only that it has consummated its decision-making but also that the action determines legal rights or obligations or has other legal consequences—then it absolutely does give rise to a colorable APA claim, as *Hawkes* illustrates.

The Board challenges UP's reliance on two cases in support of its APA claim, *Linquist v. Bowen*, 813 F.2d 884 (8th Cir. 1987), and *Mace v. Skinner*, 34 F.3d 854 (9th Cir. 1994). *See* Appellee's Br. at 36-37. UP cited both cases in support of the proposition that in granting the courts of appeals exclusive review jurisdiction of final Board coverage decisions, Congress did not implicitly strip federal district courts of their jurisdiction under 28 U.S.C. § 1331 to hear federal questions that fall outside the scope of the Railroad Acts' judicial review provisions. *See*

10

Appellant's Op. Br. at 23-26. The Board's effort to distinguish both cases falls short.

About *Linquist*, the Board contends that the district court exercised jurisdiction because of "unusual circumstances," namely that the plaintiff named both the Board and the Social Security Administration ("SSA") as defendants, and the plaintiff's dispute with the SSA was not subject to the same statutory review process. Appellee's Br. at 36. The Board also claims *Linquist* is distinguishable because the action arose in mandamus, not under the APA. *See id.* Neither distinction matters. As this Court framed the issue, it was about "recoupment caused by excess earnings, not entitlement to benefits," 813 F.2d at 887 n.11, and was therefore a "collateral issue" to the statutory authority of the Board. *Id.* n.12. That same reasoning applies here: the April 2023 Order is not about entitlement to benefits, it is a wholly collateral issue to the Board's coverage determination. Nor can the fact that the plaintiff in *Linquist* sought mandamus relief matter, as mandamus is only available if a plaintiff has no other legal remedy. *See, e.g.*, *Borntrager v. Stevas*, 772 F.2d 419, 420 (8th Cir. 1985) ("Under 28 U.S.C. § 1361, mandamus may

11

issue against an officer of the United States only when the plaintiff has ... no adequate alternative remedy.").

The Board's attempt to distinguish *Mace*, *see* Appellee's Br. at 37, also misses the mark. The fact that the plaintiff in *Mace* challenged the agency on constitutional grounds does not compel a different conclusion here. As discussed below, the same was true in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), as well as *United States v. Any and all Radio Station Transmission Equipment*, 207 F.3d 458 (8th Cir. 2000). The reason *Mace* was decided differently is because the claim was deemed collateral to the statutory scheme. *See* 34 F.3d at 860. The Ninth Circuit in *Mace* stressed that "any examination of the constitutionality of [an agency's] power should logically take place in the district courts, as such an examination is neither peculiarly within the agency's special expertise nor an integral part of its institutional competence." *Mace*, 34 F.3d at 859 (internal quotations and citation omitted). The Supreme Court has since made clear that agencies have no greater expertise on questions of statutory interpretation. *See Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2261 (2024).

12

### C. *Thunder Basin* is inapposite, and does not support the Board's position in any event.

The Board fares no better under *Thunder Basin*. At the outset, the Board overstates the reach of that case. *Thunder Basin* directs a district court that unquestionably has subject matter jurisdiction under 28 U.S.C. § 1331 to consider whether a "statutory review scheme . . . reaches the claim in question" such that, by that review scheme, Congress intended to divest the district court of its jurisdiction. *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 186 (2023); *see also id.* at 204-17 (Gorsuch, J., concurring) (describing the rule of *Thunder Basin* as "jurisdiction-stripping-by-implication"). As *Axon* made crystal clear, the mere existence of a statutory review scheme is not dispositive of whether it divests a district court of its federal question jurisdiction. *See id.* at 186 (holding that a court is able to retain jurisdiction even "if the factors point in different directions").

The most fundamental point is that *Thunder Basin* does not apply to this case. That case (and its progeny) addresses only whether an "*agency* effectively fills in for the district court," not whether a court of appeals does. *Id.* at 185 (emphasis added). Both the District Court and the Board misapply *Thunder Basin*, which says nothing about

13

channeling judicial review of final agency action to a court of appeals instead of a district court. *Thunder Basin* and its progeny address a different scenario: where the plaintiff—always a regulated party at odds with its regulator—tries to *avoid the agency process altogether* by recharacterizing a regulatory dispute that Congress committed to an agency adjudicator in the first instance as a justiciable civil complaint. *See, e.g.*, *Great Plains Coop v. Commodity Futures Trading Comm'n*, 205 F.3d 353, 355 (8th Cir. 2000) (describing the district court complaint as "an impermissible attempt to make an 'end run' around the statutory scheme").

In *Thunder Basin*, a mine operator tried to make just such an end run around the enforcement scheme set up under the federal Mine Safety and Health Act, 30 U.S.C. § 815 ("Mine Act"). *See* 510 U.S. at 205 (describing the plaintiff as seeking "pre-enforcement injunctive relief"); *see also Thunder Basin Coal Co. v. Martin*, 969 F.2d 970, 973 (9th Cir. 1992), *aff'd* 510 U.S. 200 (1994) ("Thunder Basin, apparently to avoid a citation, order, and proposed assessment of penalty, filed a complaint in federal district court seeking an injunction."). The material facts in *Pattison Sand Co., LLC v. Federal Mine Safety and Health Review*

14

*Commission* were substantially the same as in *Thunder Basin*: while prosecuting an administrative contest proceeding, consistent with the Mine Act scheme, the plaintiff filed a parallel complaint in federal district court to enjoin the agency process on various grounds. *See* 688 F.3d 507, 512 (8th Cir. 2012). This Court, observing that the relief sought in court was "nearly identical" to the relief it was seeking in the agency proceedings, and that its federal case required "factual determinations about the circumstances at the mine," affirmed the district court's dismissal of the action, citing *Thunder Basin* as the controlling precedent. *Id.* at 517.

The same was true of the plaintiffs in *United States v. Any and all Radio Station Transmission Equipment*, 207 F.3d 458 (8th Cir. 2000), and *Arch Coal, Inc. v. Acosta*, 888 F.3d 493 (8th Cir. 2018). In the former, the plaintiff tried to make an end run around the statutory licensing and judicial review scheme established by the Federal Communications Act, 47 U.S.C. § 402. *See* 207 F.3d at 462-63 ("Rather than follow the procedures established by law, he has attempted an end run blocked by the statutory channels provided for constitutional claims."). In the latter, the plaintiff was challenging an agency action for which Congress had

15

created an agency review scheme for initial decision-making, subject to subsequent judicial review in the court of appeals. This Court had no trouble finding that the plaintiff "attempted 'to short-circuit the administrative process by challenging a Department enforcement position in a district court.'" 888 F.3d at 500-01 (quoting *National Mining Association v. Department of Labor*, 292 F.3d 849, 858 (D.C. Cir. 2002) (per curiam)).

None of those precedents is relevant here. In each, the plaintiff was asking the district court either to decide substantive issues that Congress had committed to agency adjudication in the first instance or to set aside the agency proceedings on other grounds. Here, though, UP is not trying to avoid agency process—it readily concedes that the coverage dispute is properly the province of the Board and that the Board's ultimate decision will be reviewable exclusively in a court of appeals under the Railroad Acts.[2] But, as the Board now readily concedes in its brief, the action UP

---

[2] The Board mischaracterizes UP's lawsuit in its summary of the case, stating that "UP sued in district court seeking to enjoin the [Board] proceeding" due to the BMWED being named as a party. Appellee's Br. at i. UP sought to enjoin only Board proceedings at which the BMWED was allowed to participate as a party. Appellant's Op. Br. at 8.

16

filed below was not about the merits of any coverage decision of the Board.[3]

Because UP's action is a basic APA claim, review is presumptively in federal district court. *See Rodriguez v. Penrod*, 857 F.3d 902, 906 (D.C. Cir. 2017) ("APA review takes place first in the federal district courts, not the courts of appeals."). Congress must clearly express when it deviates from this presumption. *NetCoalition v. S.E.C.*, 715 F.3d 342, 347 (D.C. Cir. 2013) ("[U]nless the Congress . . . expressly supplie[s] the courts of appeals with jurisdiction to review agency action directly, an APA

---

[3] The Board's citation to the Seventh Circuit's decision in *Denberg v. U.S. Railroad Retirement Board*, 696 F.2d 1193, 1198 (7th Cir. 1983), for the unexceptional proposition that district courts lack jurisdiction to review Board proceedings thus also misses the mark. Appellee's Br. at 29. UP is not trying to avoid Board proceedings. (For the same reason, the Board's citation to *Hairston v. Railroad Retirement Board*, 2022 WL 18671129 (N.D. W. Va. Sept. 22, 2022), is of no moment.). In any event, *Denberg* is likely abrogated by *Axon. Compare Denberg*, 696 F.2d at 1198-99 (Wood, J., dissenting) (disagreeing that plaintiffs constitutional claims had to be channeled initially to the Board, noting it would be "demonstratively futile" and "serves neither the review function of this court nor the interests of the parties"), *with Axon*, 143 S. Ct. at 906 (observing that it makes no sense channeling constitutional claims to an agency because the agency lacks the expertise to decide those questions and the here-and-now harm resulting from the alleged constitutional violations "would remain no matter how much expertise could be 'brought to bear' on the other issues these cases involve" (quoting *Thunder Basin*, 510 U.S. at 215)).

17

challenge falls within the general federal question jurisdiction of the district court and must be brought there ab initio."). UP explained in its opening brief why the April 2023 Order is not the sort of "decision" the Railroad Acts channel to the courts of appeals to review. *See* Appellant's Op. Br. at 28-40. Because the April 2023 Order directing the BMWED to be joined as a party to the proceedings is not a Board decision that Congress, through the Railroad Acts, directed to be reviewed exclusively in a court of appeals, the presumption of district court jurisdiction holds.

In any event, as UP explained in its opening brief, the three *Thunder Basin* factors—to the extent applicable—point in UP's favor. *See* Appellant's Op. Br at 41-44. As to the first factor, as the Board now concedes, UP would be obligated to wait until the Board renders its ultimate benefits decision before having a right under the Railroad Acts to judicial review of the April 2023 Order. That is the exact opposite of meaningful judicial review—by that point, the cat is long out of the bag, and the damage done. No order of this Court or any other can compel the BMWED to "unsee" the confidential information it will have already seen by virtue of being a party to the Board proceedings.

18

Second, the Board's designation of the BMWED as a party to this action is wholly collateral to its ultimate merits decision as to coverage. As UP has emphasized from the beginning, the Board has no institutional need to make the BMWED a party to its proceedings in order to get all the information it needs to make an informed decision as to coverage. R. Doc. 32 at 3-5. The District Court said the "party" question was not collateral because it presents a "procedural or evidentiary" matter of the sort typically decided by agency adjudicators and "is based on [the Board's] determination that BMWED has information and expertise relevant to the work performed by 'flaggers.'" App. 129; R. Doc. 38 at 21. Respectfully, the District Court overlooked that UP is not disputing that the Board may have some interest in hearing from the BMWED,[4] and to that end is entitled to do so. But, for the reasons UP pointed out, the Board has the tools to get whatever information it needs from the BMWED without making it a party. *See* R. Doc. 32, at 3 (explaining the Board's authority to issue subpoenas requiring attendance, testimony, and production of evidence); *see also* 45 U.S.C. § 362(a). The BMWED's

---

[4] So there is no misunderstanding, UP does not agree that the BMWED has anything useful to add to the Board proceedings. The point here is that, whether true or not, the issue is not material to UP's complaint.

Appellate Case: 24-2547     Page: 25     Date Filed: 12/23/2024 Entry ID: 5469131

*party* status is irrelevant—it is wholly collateral—to the Board's ability to gather information.

For its part, the Board states *ipse dixit* that the "party" issue "is not collateral to the review scheme for Board proceedings" because it "is directed at matters where the Board is an expert—determining which entities should be considered parties to a hearing under the Board's regulations." Appellee's Br. at 25. That makes no sense: Congress did not create the Board to be an expert in determining who should be parties to proceedings before it. It created the Board to decide retirement benefits coverage issues for railroad employers and employees.

The Board cites no authority in support of its position that the Board is the "expert" on who should be parties to coverage proceedings. To the contrary, on the question of expertise—the third *Thunder Basin* factor—the question of the Board's authority is one of statutory and regulatory interpretation on which the courts are expert. *See Loper Bright*, 144 S. Ct. at 2261 ("[C]ourts, not agencies, will decide *all* relevant questions of law arising on review of agency action.") (internal quotation and citation omitted).

20

On this factor, the District Court seems to have asked the wrong question. It said that UP "struggles to explain why … BMWED's participation as a party is not intertwined with or embedded in the matters on which [the Board] is expert." App. 130; R. Doc. 38 at 22. But there was and is no struggle. UP's APA claim is not about whether the Board, exercising its regulatory discretion, can look to third parties like the BMWED for information potentially relevant to its coverage determination—its particular "expertise." UP's claim, rather, is about whether the Board is legally authorized to designate the BMWED—or anyone—a "party" to a proceeding where neither the authorizing statute nor its implementing regulations provides it with the authority to do so. That claim presents a pure question of legal interpretation that *Loper Bright* leaves to the courts to decide.[5]

The District Court and the Board have misconstrued *Thunder Basin* and its application to this action.

---

[5] By the government's logic, the Board could designate literally anyone a "party" to a coverage dispute. There is zero statutory support for the proposition that Congress granted the Board that authority. Regardless, insofar as it concerns the BMWED, it is a question for the District Court to address in the first instance under the APA.

21

**II.    The Board's new merger theory is forfeited, wrong, and above all else underscores why reversal is necessary.**

As for whether the April 2023 Order is in fact an "interim Board order[]" that "merge[s] into" the ultimate benefits decision, which is subsequently reviewable by a court of appeals, Appellee's Br. at 34-35 (internal quotations and citation omitted), the Board forfeited this argument. Below, the Board specifically "concede[d] [that] Board Order 2023-33 *is a final order within the meaning of*" the Railroad Acts. R. Doc. 31 at 6 (emphasis added). Moreover, the District Court dismissed the case on that basis. App. 109; R. Doc. 38 at 1. The Board cannot advance arguments for the first time in this Court. *See California v. Texas*, 593 U.S. 659, 674 (2021) (holding that when an appellee offers a "theory [that] was not directly argued . . . in the courts below," reviewing courts "decline to consider it").

Even if it were not forfeited, this argument lacks merit. In contending that the April 2023 Order is not reviewable now under the APA and is, rather, an interim Board order that will merge into the final decision and be reviewable as part of a future appeal of the final decision, *see* Appellee's Br. at 29, 34-35, the Board ignores controlling precedent on the question of whether its April 2023 Order constitutes final agency

22

action. For the reasons explained above and in UP's opening brief, the April 2023 Order is final agency action reviewable under the APA, and the District Court's jurisdiction to hear UP's APA complaint is not displaced by the Railroad Acts.

Finally, and perhaps most importantly, the Board's new argument only serves to highlight why the District Court's Order must be reversed: both parties to this appeal now agree that the April 2023 Order was not a final *decision* of the Board for purposes of appeal under the Railroad Acts. The Board's new theory on appeal is that the April 2023 Order is an "interim Board order[]" that "merge[s] into" the ultimate benefits decision, which, in turn, is appealable to a court of appeals at a later time, Appellee's Br. at 35 (internal quotations and citation omitted). This amounts in substance to a concession that the District Court's reasoning was wrong: the April 2023 Order was *not* a final Board decision subject to appeal *now* under the Railroad Acts. *See generally* Appellant's Op. Br. at 28-40. The District Court's order should be vacated on this basis alone.

## III. Mandamus is not the appropriate remedy.

The Board suggests at various points in its opposition brief that to the extent UP faces imminent injury, its relief lies in petitioning this

23

Court for a writ of mandamus. Appellee's Br. at 20, 34, 44. Here again the Board has forfeited this argument—it goes to the plaintiff's statement of a claim, and as such was required to be raised below as part of a motion to dismiss under Rule 12(b)(6). *See, e.g.*, *Ali v. Frazier*, 575 F. Supp. 2d 1084, 1089 (D. Minn. 2008) (explaining "the distinction between dismissals for failure to state a claim and dismissals for lack of subject-matter jurisdiction" regarding "mandamus claims"). Since this argument was not raised to the District Court—the Board moved to dismiss exclusively on jurisdictional grounds, under Rule 12(b)(1)—it is not properly presented to this Court. *See California*, 593 U.S. at 674.

The argument is also internally inconsistent with the Board's principal argument. On the one hand, the Board argues that UP has a legal remedy under the Railroad Acts while simultaneously arguing on the other hand that UP can seek immediate judicial review of the April 2023 Order by petitioning this Court for mandamus. Both cannot be true. *See Borntrager*, 772 F.2d at 420 (observing that mandamus relief is only available where the plaintiff has "no adequate alternative remedy"). Furthermore, mandamus is usually only available to plaintiffs who seek to compel agency action. *See* 28 U.S.C. § 1361 ("The district courts shall

24

have original jurisdiction of any action in the nature of mandamus to *compel* an officer or employee of the United States or any agency thereof to *perform* a duty owed to the plaintiff.") (emphasis added). Here, the Board's action at issue was already "performed," and is final for the reasons stated above. Thus, UP's proper relief is an APA action in federal district court to review and "set aside" that final agency action. 5 U.S.C. § 706(2).

Finally, and in any event, the argument fails on its merits because, for the reasons stated, UP has an adequate remedy in the APA.

## CONCLUSION

For the reasons stated above and in UP's opening brief, the District Court's order dismissing the case for lack of jurisdiction should be reversed, and the case should be remanded to the District Court with instructions for that court to decide the merits of UP's APA claim.

Respectfully submitted,

*/s/* Daniel W. Wolff

Scott Parrish Moore
Spencer Murphy
BAIRD HOLM LLP
1500 Farnam Street,
Suite 1500
Omaha, NE 68102

25

Phone: (402) 344-0500
spmoore@bairdholm.com
smurphy@bairdholm.com

Daniel W. Wolff
CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2595
Phone: (202) 624-2500
dwolff@crowell.com

*Counsel for Appellant*

26

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation contained in Fed. R. App. P. 32(a)(7) because, excluding the portions exempted by Rule 32(f), this brief contains 5,307 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Century Schoolbook.

Pursuant to Circuit Rule 28A(h), the brief has been scanned for viruses and is virus-free.

*/s/* Daniel W. Wolff
Daniel W. Wolff

**CERTIFICATE OF SERVICE**

I certify that on December 20, 2024, I electronically filed the foregoing brief with the Clerk of Court for the U.S. Court of Appeals for the Eighth Circuit through the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

<u>/s/ Daniel W. Wolff</u>
Daniel W. Wolff